UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____
                                                    |
                                                    |
JOHN B. WOLF, SR., and MARGARET A. WOLF,            |        Case No. 1:07-cv-622
                                                    |
        Plaintiffs,                                 |    HONORABLE PAUL L. MALONEY
                                                    |
                v.                                  |
                                                    |
BANKERS LIFE AND CASUALTY COMPANY,                  |
SHANNON NELSON, and TWO UNIDENTIFIED                |
MICHIGAN RESIDENTS JOHN DOE AND JANE DOE,           |
                                                    |
        Defendants.                                 |
                                                    |
_____

**Opinion and Order**

**Granting Plaintiff's Motion to Remand this Case to State Court**
**Denying As Moot the Defendant's Motion to Dismiss the First Amended Complaint**
**Denying as Moot the Plaintiff's Motion for Leave to File a Second Amended Complaint**

For the reasons that follow, the court will grant the plaintiffs' motion to remand this matter

to state court and deny all other pending motions as moot.

**BACKGROUND**

Plaintiffs John B. Wolf, Senior, and Margaret A. Wolf (collectively "Wolf") are Michigan

residents who hold long-term care insurance policies issued by defendant Bankers Life and Casualty

Company ("Bankers"), and defendant Shannon Nelson resides in Michigan and is the manager of

Bankers' office in Traverse City, Michigan.[1]  Am. Comp. ¶¶ 1-2, 6, and 9-11.  In 1999, Nelson participated in the decision to hire Margaret Zimmerman as a Bankers insurance sales agent and representative, *id.* ¶ 13, and he had supervisory authority over Zimmerman, *id.* ¶ 17, who sold the long-term care policies in question to the Wolfs in July 1999, *id.* ¶ 19.  Based at least in part on Nelson's recommendation, Bankers terminated the employment of Zimmerman in 2002 due to her use of business practices that Bankers considered unethical.  *Id.* ¶¶ 20-28.

The Wolfs allege that despite their repeated inquiries, personnel at Bankers' Traverse City office (including defendants Nelson,  John Doe, and Jane Doe) refused or failed to tell them where Zimmerman was working or why Bankers had terminated Zimmerman.  *Id.* ¶¶ 29-55.  In June 2002, the Michigan Department of Consumer and Industry Services ("the Michigan agency") sent a letter to a Bankers executive regarding a complaint that it had received about Zimmerman's conduct, yet to date Bankers has never told the Michigan agency that it had terminated Zimmerman due to unethical business practices, nor has Bankers contacted criminal authorities about Zimmerman's possibly illegal conduct.  *Id.* ¶¶ 56-77 and 91-93 and 106-112.  Instead, Bankers directed defendant Nelson to prepare a report about Zimmerman's conduct while employed with Bankers; in July 2002,

---

[1]

The amended complaint does not specify the *citizenship* of the Wolfs.  For purposes of diversity jurisdiction, residency does not necessarily prove citizenship.  *See, e.g., Deasy v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 47 F. App'x 726, 728 (6th Cir. 2002) ("To establish the 'citizenship' required for diversity jurisdiction, Deasy must show more than mere Tennessee residence.  He must show that Tennessee is his domicile.  To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere.") (citations omitted).  Nonetheless, the Wolfs allege that they reside in Michigan, and nothing in the pleadings or briefs suggests that the Wolfs have the intention to make their home in another state or lack the intention to keep their home in Michigan indefinitely.  Moreover, the named defendants seem to assume that the Wolfs are Michigan *citizens* as well.  Accordingly, the court treats the Wolfs as Michigan citizens for purposes of this ruling.

Nelson submitted her report, which included allegations that Zimmerman committed forgery and fraud, to numerous Bankers executives and employees in the Traverse City office (including defendants John Doe and Jane Doe). *Id.* ¶¶ 78-86. The Wolfs allege that an Assistant General Counsel of Bankers read Nelson's report but then informed the Michigan agency in July 2002 only that Bankers had terminated Zimmerman "For cause due to . . . inappropriate sales practices." *Id.* ¶¶ 87-90. The Wolfs allege that even after Nelson circulated her report, Bankers never honestly revealed to the Wolfs the reason why it had terminated their former sales agent Zimmerman – not in a July 16, 2002 letter from agent Janice Fron or otherwise. *Id.* ¶¶ 94-104.

Finally, the Wolfs allege that from some time before Bankers terminated Zimmerman (April 10, 2002), Bankers knew or should have known that Zimmerman "was not a person who Plaintiffs, as Bankers Life policy holders, should trust to properly, fairly, honestly and ethically handle any of Plaintiffs' insurance and financial interests" and that Zimmerman was likely to contact the Wolfs and other policyholders. Am. Comp. ¶¶ 104-105. Zimmerman contacted the Wolfs in the fall of 2002 and eventually persuaded them, in February 2004, to invest money in a project that she recommended; the Wolfs characterize the project as a Ponzi scheme and allege that they lost over $114,000 therein. *Id.* ¶ 113. The Wolfs claim that they never would have invested their money in a project recommended by Zimmerman if Bankers had told them that they had terminated her as a sales agent because of unethical business practices. *Id.* ¶¶ 114-17.[2]

---

[2]

In 2005, Zimmerman was arrested and charged with several state-law felonies including the defrauding of the Wolfs. Am. Comp. ¶ 118. In 2006-2007, Zimmerman pled guilty to a ten-year felony and was sentenced to 57-120 months in prison. *Id.* ¶¶ 119-20. The Wolfs brought a civil action against Zimmerman in Michigan state court and won a judgment against her for over $118,000, yet they allege that Zimmerman lacks the resources to satisfy the judgment. *Id.* ¶¶ 121 and 123.

**PROCEDURAL HISTORY AND CLAIMS**

On May 29, 2007 and June 8, 2007, Wolf filed the original complaint and first amended complaint, respectively, in the Circuit Court of Grand Traverse County, Michigan ("state court"). The amended complaint asserts eight claims. Counts I-III contend that Bankers, John Doe, and Nelson breached their common-law duties to warn them of the danger posed by terminated sales agent Zimmerman, Am. Comp. ¶¶ 124-57 and 158-78 and 179-94. Count IV contends that all four defendants committed intentional misrepresentation and silent fraud in violation of Michigan common law. *Id.* ¶¶ 195-246. Count V contends that Bankers and Nelson were negligent and intentionally or negligently breached their duty to report Zimmerman's violations of the law as required by 18 U.S.C. § 4[3] and to inform the Michigan agency of the true reasons for her termination as required by Michigan statute. *Id.* ¶¶ 247-291. Counts VI, VII, and VII allege concert of action, civil conspiracy, and violation of the Michigan Consumer Protection Act. *Id.* 292-97 and 298-308 and 309-30. The amended complaint seeks compensatory damages "in excess of $118,000", unspecified punitive damages, as well as interest, costs, and attorney fees for the Michigan Consumer Protection Act claim. Am. Comp. at 48.

On June 29, Bankers and Nelson jointly filed a timely notice removing the case to this court. On July 12, Wolf moved to remand this case to state court; Bankers filed an opposition brief on

---

[3]

Title 18 U.S.C. § 4 provides, "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title, or imprisoned not more than three years, or both." This statute has been construed to require both knowledge of a crime and some affirmative act of concealment or participation. *Branzburg v. Hayes*, 408 U.S. 665, 696 n.36 (1972) (citations omitted).

-4-

August 13 and Wolf filed a reply brief on August 27.[4]

### LEGAL STANDARD:  Removal to Federal Court

Title 28 U.S.C. § 1441 authorizes defendants to remove cases to federal district court if there

exists diversity or federal-question jurisdiction.  Section 1441 provides, in its entirety:

>   (a)   Except as otherwise expressly provided by Act of Congress, any civil action
>         brought in a State court of which the district courts of the United States have
>         original jurisdiction, may be removed by the defendant or the defendants, to
>         the district court for the United States for the district and division embracing
>         the place where the action is pending.  For purposes of removal under this
>         chapter, the citizenship of defendants sued under fictitious names shall be
>         disregarded.
>
>   (b)   Any civil action of which the district courts have original jurisdiction
>         founded on a claim of right arising under the Constitution, treaties or laws of
>         the United States shall be removable without regard to the citizenship or
>         residence of the parties.  Any other such action shall be removable only if
>         none of the parties in interest properly joined and served as defendants is a
>         citizen of the state in which such action is brought.

Because removal jurisdiction raises significant federalism concerns, the Court must strictly construe

removal jurisdiction.  *Shamrock Oil & Gas v. Sheets, 313 US 100 , 108-09 (1941)*  "The removing

party bears the burden of establishing federal jurisdiction, and *all doubts should be resolved against*

*removal*."  *Harden v. Jayco, Inc.*, No. 06-1661, – F.3d –, 2007 WL 2176206, at \*2 (6th Cir. July 31,

2007) (emphasis added) (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir.

2006)).  Removal is proper only if federal jurisdiction existed at the time of removal, without

considering subsequent events, whether caused by the plaintiff or beyond his control.  *Williamson*

*v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007) (Griffin, J.) (citing *St. Paul Mercury Indem.*

---

[4]

   In July 2007, Bankers filed a motion to dismiss the first amended complaint for failure to
state a claim on which relief can be granted.  On September 13, 2007, Wolf filed a motion for leave
to file a second amended complaint.

*Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938) and *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000)).

**DISCUSSION:**
**Has Defendant Bankers Life Established that it is Diverse from the Wolfs?**

Title 28 U.S.C. § 1332 authorizes district courts to exercise diversity jurisdiction only when there is *complete* diversity of citizenship. *Probus v. Charter Communications, LLC*, No. 06-6188, – F. App'x –, 2007 WL 1451959, at *2 (6th Cir. May 16, 2007) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). Complete diversity exists only when no plaintiff and no defendant are citizens of the same state. *Curry v. U.S. Bulk Transport, Inc.*, 462 F.3d 536, 540 (6th Cir. 2006) (citing *Jerome-Duncan, Inc. v. Auto-by-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999)).

The general rule is that for the purpose of determining diversity jurisdiction and removability, a corporation is deemed to be a citizen both of any state where it is incorporated and the state where it maintains its principal place of business. 28 U.S.C. § 1332(c)(1). The parties agree that Bankers is incorporated in Illinois and has its principal place of business in Illinois, *see* Am. Comp. ¶ 5 and Bankers Br. at 3 ¶ 12, so under the general rule Bankers is a citizen of Illinois alone. The statute makes an exception, however, that can restrict diversity jurisdiction for certain direct actions against insurers:

> *[I]n any direct action against the insurer of a policy or contract of liability insurance*, whether incorporated or unincorporated, *to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen*, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

*Id.* (emphasis added). Wolf contends that this exception applies to defendant Bankers Life and

-6-

Casualty Company, i.e, that the instant action is a "direct action against the insurer of a policy or contract of liability insurance." The court disagrees.

Our Circuit has explained the purpose of the direct-action exception to the corporate-diversity rule as follows:

> The immediate purpose of the 1964 amendment to § 1332 (c) was made clear in the legislative history. Louisiana and Wisconsin had enacted laws permitting one claiming injury at the hands of another who was covered by liability insurance to sue the liability insurance carrier rather than the alleged wrongdoer. Thus even where the plaintiff and the alleged tortfeasor were residents of the same state, if the liability insurer was a resident of a different state, diversity jurisdiction could be asserted in such a direct action [prior to the amendment]. The Louisiana act particularly resulted in a flood of essentially local lawsuits clogging already crowded district court dockets. By cloaking the nonresident insured with the citizenship of its insured, Congress removed the basis of diversity jurisdiction.

*Ford Motor Co. v. Ins. Co. of North America*, 669 F.2d 421, 424 (6th Cir. 1982) (citations omitted). Wolf relies on language in that same decision, where our circuit seemed to give the direct-action exception a broad reading:

> The impetus for the amendment was the situation when Louisiana and Wisconsin departed from the traditional practice of treating the insured rather than the insurer as the real party in interest in automobile negligence cases. However, *if its language encompasses other situations, we should not limit application of the amendment to the specific conditions which gave it birth. The language of the amendment is inclusive rather than exclusive*: "in any direct action against the insurer of a policy or contract of liability insurance . . . to which the insured is not joined as a party-defendant . . . ."

*Ford Motor Co.*, 669 F.2d at 425 (emphasis added). In the *Ford* case, our circuit held that the direct-action exception applied to claims under a state statute that replaced traditional tort causes of action with no-fault insurance:

> [A Michigan statute] abolished tort liability arising from the ownership, maintenance or use of a motor vehicle in Michigan. As a substitute for such tort liability[,] Michigan provided "personal protection benefits" and "property protection benefits" for those injured or suffering property damage arising out of the ownership,

maintenance or use of such vehicles.  These benefits are provided on a no-fault basis rather than on the basis of traditional tort liability, and actions to secure the benefits may be maintained directly against the insurer of the vehicle rather than the insured. The literal requirements for application of the proviso are met.

No-fault insurance had not been adopted in any jurisdiction when Congress enacted the 1964 amendment to § 1332 (c).  However, in one respect no-fault insurance operates in exactly the same way as the Louisiana and Wisconsin direct-action statutes – it permits a person claiming injury or damage arising from the ownership or use of a motor vehicle to sue the insurer rather than the owner or operator of the vehicle.  Unless the proviso is held to apply, the same "back door" diversity which Congress eliminated through the 1964 amendment would be possible under no-fault. No-fault represents a latter-day attempt by the states to improve the mechanism for recovery by those injured and damaged in accidents arising out of the use of motor vehicles. Given Congress' reaction to earlier state legislation which permitted direct actions, no-fault should not be held to expand the jurisdiction of federal courts.

*Ford Motor Co.*, 669 F.2d at 425.

Wolf reasons that *Ford Motor Company* supports application of the direct-action proviso

(thereby attributing plaintiff Wolf's Michigan citizenship to defendant Bankers Life) because

[a]pplying the unambiguous words of 28 USC 1332(c)(1), treating it as inclusive rather than exclusive, the Wolfs, Michigan residents, have asserted tort claims against Shannon Nelson, also a resident of Michigan, as well as his employer, the insurance company Bankers Life and Casualty Company.  The policies of insurance which are the predicate basis for Plaintiffs' claims for breach of duty are policies intended to protect Plaintiffs from liability for future health care costs.  There is nothing within the language of 28 USC 1332(c)(1) to exclude its application from this case.

Wolf Reply Br. at 2.[5]  Wolf acknowledges that his claims against Bankers are not claims seeking

---

[5]

The Sixth Circuit has never cited *Ford Motor Company*, on which Wolf so heavily relies, in a published decision.  Our circuit has cited *Ford* in four unpublished decisions, which of course are not binding precedent.  *See* 6TH CIR. R. 206(c); *US v. Lancaster*, No. 06-5668, – F.3d –, 2007 WL 2457448, at *3 (6th Cir. Aug. 31, 2007) (Griffin, J.) ("[They] are unpublished, and therefore not precedentially binding under the doctrine of stare decisis . . . .") (citing *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 n.4 (6th Cir. 2007)).

In any event, none of those four unpublished decisions supports Wolf's position.  Two of the decisions cite *Ford* only for the general proposition that complete diversity does not exist unless no

-8-

coverage under a policy or contract of liability insurance.  Wolf contends that the direct-action

exception still applies, however, because

> Defendant Bankers Life is an insurance company.  It is the insurer, under policies of long term care as referred to in paragraph 11 of Plaintiffs' First Amended Complaint . . . , where it may become liable for the payment of medical care expenses incurred by Plaintiffs.  Plaintiffs have brought a[n] action *directly* against Bankers Life claiming breach of duties arising from the existence of the policy and the special relationship it evidences.  The claims are not brought *on the policies*.  They are brought *against the insurer*.  28 USC 1332(c)(1) does not limit the "direct action" to actions on the policies.  By its terms, the statute focuses upon actions *against the insurer*.  The relevant language of the exception is clear and is not limiting[:] ". . . except in any direct action against the insurer of a policy or contract of liability insurance."  The suit is *against the insurer of a policy or contract* of long term care insurance.  As a policy intended to protect Plaintiffs from, at least some liability for

plaintiff is a citizen of the same state as any defendant.  *See Brooks v. Henry Ford Hosp.*, No. 99-2111, 221 F.3d 1333, 2000 WL 921495 (6th Cir. June 28, 2000) (per curiam) (Martin, C.J., & Batchelder & Moore, JJ.); *Carlock v. Williams*, 182 F.3d 916, 1999 WL 454880 (6th Cir. June 22, 1999) (per curiam) (Merritt, Nelson, & Siler, JJ.).

The third decision cites *Ford* only for its explanation of the purpose of the direct-action exception.  *See Estate of Monahan v. American States Ins. Co.*, 75 F. App'x 340, 343 (6th Cir. 2003) (Clay, J., joined by Schwarzer, District J., with Batchelder, J., concurring).  The panel in *Monahan* held that the direct-action exception does not apply to an employee's action seeking a declaration that his employer's commercial general-liability insurance policies provided the employee with underinsured/uninsured motorist (UM/UIM) coverage, which suits are called "*Scott-Pontzer*" actions in Ohio.  Quoting *Lee-Lipstreu*, 329 F.3d at 899-900, *Monahan* held that "[a]pplying the direct action provision to a dispute between an insured and her own insurance company would result in an absurdity – federal courts would never hear common insurance disputes because the insured and the insurer, the plaintiff and the defendant, would always be considered citizens of the same state." *Id.* at 343.

The fourth of the four unpublished Sixth Circuit decisions to cite *Ford* likewise does not support Wolf's position that the direct-action exception applies.  *Stockton v. General Accident Ins. Co.*, No. 89-5492, 897 F.2d 530, 1990 WL 20477 (6th Cir. Mar. 6, 1990) (per curiam) (Krupansky, Nelson, & Celebrezze, JJ.) is simply inapposite.  The plaintiffs there obtained default judgments in a state-court tort action against the driver and owner of an ambulance in which one of the plaintiffs had been injured.  The plaintiffs then brought suit against the default judgment-debtors' insurer, and the insurer removed to federal court.  The *Stockton* panel held that the action was not a direct action under 28 U.S.C. § 1332(c)(1).

long term medical care costs, the policy is a "liability policy."

Wolf Br. at 6.  The court finds Wolf's argument on this score to be unpersuasive and at odds with Sixth Circuit precedent interpreting the direct-action exception.

As Wolf concedes, "the claims against Bankers Life, arising, in the first instance, from alleged common law breaches of duty related to existing policies of long term care insurance for which no current claims are being sought and are not the usual 'direct actions' addressed in decisions such as *Lee-Lipstreu v. Chubb Group of Ins. Cos.*, 329 F.3d 898, 900 (6th Cir. 2003) that discuss claims under no-fault automobile policies."  Wolf Br. at 7.  Wolf's attempt to evade this salient distinction is unavailing:  he merely invokes the general principle that doubts about jurisdiction are to be construed in favor of remand, and a district-court decision stating that the direct-action exception was enacted "to keep ordinary state-court tort claims out of federal court."  Wolf Br. at 7-8 (citations omitted).

These general statements must yield to *Lee-Lipstreu v. Chubb Group of Ins. Cos.*, 329 F.3d 898 (6th Cir. 2003).  That decision does not *precisely* and conclusively resolve the applicability of the direct-action exception in the instant situation, but it strongly counsels against applying the exception here.  In *Lee-Lipstreu* an employee who was injured while not acting within the scope of her employment sued her employer's commercial general liability insurer to recover UIM benefits; such claims are known as *Scott-Pontzer* claims in Ohio.  The Circuit acknowledged that "the direct action exception can apply "in certain situations involving insureds and insurers," but concluded that it did not apply there.  *Id.* at 900.  The Circuit reasoned that

> The application of the direct action provision of § 1332(c)(1) ignores a fundamental component of a *Scott-Pontzer* claim – that the entire suit rests on the conclusion that the employee is the insured under the policy.  Thus, in a *Scott-Pontzer* claim, the insured sues her own insurance carrier.  The insured obviously is not joined as a

> party-defendant because the insured is the plaintiff.  Applying the direct action
> exception to a dispute solely between an insured and her own insurance company
> would result in an absurdity – federal courts would never hear common insurance
> disputes because the insured and the insurer, the plaintiff and the defendant, would
> always be considered citizens of the same state.

*Lee-Lipstreu*, 329 F.3d at 899-900.  *Cf. Warren v. State Farm Mut. Auto. Ins. Co.*, No. 06-15054,

2007 WL 1267579, at *3 (E.D. Mich. Apr. 30, 2007) ("The Sixth Circuit has . . . observed that §

1332(c)(1)['s direct-action exception] does not apply where its purpose would not be served: i.e.,

in actions by an insured against his own insurer to recover for his own injuries.") (citing, *inter alia*,

*Lee-Lipstreu*)..

   In the Wolfs' favor, the court notes that their case is not a "common insurance dispute" of

the sort that *Lee-Lipstreu* held should be governed by the usual corporate-citizenship rule rather than

the direct-action exception; the Wolfs do not seek a declaration of coverage or a recovery on the

policies.  Nonetheless, just as Lee-Lipstreu's claim against the insurer rested on her status as the

insured, the Wolfs' case largely rests on the premise that their status as insureds gave rise to a

"special relationship" that obligated Bankers and its employees to warn them of the danger posed

by terminated sales agent Zimmerman.  Thus, while *Lee-Lipstreu* does not squarely address the

instant situation, its rationale counsels against applying the direct-action exception here.[6]

---

[6]

   Moreover, subsequent Sixth Circuit panels have broadly and unequivocally characterized
*Lee-Lipstreu*'s holding in a way that precludes application of the direct-action exception here: "[*Lee-Lipstreu* held] that federal courts have jurisdiction over actions by an insured against his or her own
insurance company if the two parties are diverse because such actions are not direct actions within
the meaning of 28 U.S.C. §1332(c)(1)."  *Henry v. Wausau Business Ins. Co.*, 351 F.3d 710, 713 (6th
Cir. 2003) (Kennedy, Gilman & Gibbons, JJ.); *see also Hindall v. Winterthur Int'l*, 337 F.3d 680,
683 (6th Cir. 2003) (Keith, Moore, & Gibbons, JJ.) (same); *Clark v. Chubb Group of Ins. Cos.*, 337
F.3d 687, 689-90 (6th Cir. 2003) (Moore, Clay, & D.J. Lawson) (same); *Roberts v. Universal
Underwriters Co.*, 334 F.3d 505, 508 (6th Cir. 2003) (Moore, J., joined by Collier, D.J., with
Batchelder, J., concurring on this score).

Therefore, the court declines the plaintiffs' invitation to apply the direct-action exception to impute the insureds' (the Wolfs') Michigan citizenship to Bankers. Under the general rule of 28 U.S.C. § 1332(c)(1), the court finds that Bankers is a citizen of Illinois alone and therefore is diverse from the Wolfs.

**DISCUSSION:**
**Has Bankers Shown that Non-Diverse Defendant Nelson was Fraudulently Joined?**

**A.      Introduction**

Nonetheless, Bankers has not carried its burden of establishing diversity jurisdiction. While defendant Bankers Life and Casualty Insurance Company is diverse from the Wolfs, the court finds that defendant Shannon Nelson is not. It is undisputed that Nelson is a Michigan citizen, so his presence as a party defendant destroys complete diversity unless Bankers demonstrates that he was fraudulently joined. *See Saltire Indus., Inc. v. Waller, Landsden, Dortch & Davis, PLLC*, 491 F.3d 522, 530 (6th Cir. 2007) ("the burden of proving fraudulent joinder is on the alleging party") (citation and internal quotation marks omitted); *Enos v. Ky. Distilleries & Warehouse Co.*, 189 F. 342 (6th Cir. 1911) ("the burden of proof was on the removing defendants to establish the fact of fraudulent joinder") (citation omitted). Bankers fails to make that showing.

**B.      Legal Standard:  "Fraudulent Joinder" of a Nondiverse Defendant**

"To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). To succeed on its

fraudulent-joinder argument, Bankers must show that the Wolfs do not have even "a colorable cause of action against" the non-diverse defendant, Nelson.  *Jerome-Duncan v. Auto-by-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999).

Wolf's motive in joining the non-diverse defendant (Nelson) is immaterial to this fraudulent-joinder determination.  *Boladian v. UMG Recordings, Inc.*, 123 F. App'x 165, 168 (6th Cir. 2005) (citing *Jerome-Duncan, Inc.*, 167 F.3d at 907); *Stacy v. Shoney's, Inc.*, No. 97-5393, 142 F.3d 436, 1998 WL 165139, at *2 (6th Cir. Mar. 31, 1998) ("Whether joinder is fraudulent does not depend on a party's subjective intent to defeat jurisdiction . . . .") (citation to district-court decision omitted). In other words, it does not matter if this court believes that Wolf sued Nelson in order to defeat diversity and keep the case in state court rather than federal court: "Litigation strategy cannot, without more, support" a finding of fraudulent joinder.  *Saltire Indus.*, 491 F.3d at 530 (citation omitted).

"'[T]here can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law' and . . . *any disputed questions or ambiguities in the controlling state law should be resolved in favor of the nonremoving party*."  *Saltire Indus.*, 491 F.3d at 530 (quoting *Alexander v. EDS Corp.*, 13 F.3d 940 (6th Cir. 1994)) (emphasis added).

One leading authority states that the removing parties "must demonstrate the *absence of any possibility*" that the plaintiff could state a claim against the non-diverse defendant.  *Travis*, 326 F.3d at 647 (emphasis in original) (quoting 16 MOORE'S FED. PRAC. & PROC. 107.14[2][c][iv][A] (2003)); *accord Briarpatch Ltd., LP v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) ("courts overlook the presence of a nondiverse defendant if from the pleadings there is *no possibility* that the

-13-

claims against that defendant could be asserted in state court.") (emphasis added).[7]  Such a standard

is "even more favorable" to plaintiffs than the standard for ruling on a motion to dismiss for failure

to state a claim under Fed. R. Civ. P. 12(b)(6).  *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th

Cir. 1999).


**C.     Inapposite and Nonbinding Decisions Cited by Bankers**

Bankers begins its argument in favor of a fraudulent-joinder finding by writing that

this case exemplifies the court's fraudulent-joinder reasoning in *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quoting *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1426 (6th Cir. 1989)):

> None of the individual defendants are alleged to have done anything wrongful except to cause the corporate defendants to act in an allegedly wrongful manner.  The alleged wrongs of which plaintiffs complain are all corporate wrongs.  Plaintiffs do not and apparently cannot allege that any of the individual defendants owed them any duty in their individual capacity, nor that they did any act in their individual capacity which violated any such duty or otherwise caused plaintiffs harm except as a result of corporate acts.

Because Plaintiffs have no colorable claim against Nelson, Nelson's citizenship must

---

[7]

At least four sister circuits have called this a "heavy" burden.  *See:*

*Briarpatch Ltd., LP v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (**2d Cir.** 2004);

*Baltimore Cty., Md. v. Signa Healthcare*, No. 06-1877, – F. App'x –, 2007 WL 1655461, at *5 (**4th Cir.** June 5, 2007) (citing *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999));

*Travis v. Irby*, 326 F.3d 644, 647 (**5th** Cir. 2003);

*Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (**7th Cir.** 1992).

*Accord Bucksnort Oil Co., Inc. v. Nat'l Convenience Stores, Inc.*, 585 F. Supp. 883, 886 (M.D. Tenn. 1984) (Nixon, J.) ("The party asserting fraudulent joinder has a heavy burden of pleading, production and persuasion . . . .").

be ignored for diversity purposes.

Bankers Br. at 8-9.  But *Alexander* and *Kruso* are of no avail to Bankers on this score.  The *Alexander* panel did <u>not</u> adopt the quoted *Kruso* passage as its holding.  On the contrary, *Alexander* made no finding as to whether the plaintiffs had fraudulently joined the two nondiverse individual defendants; rather, the panel merely remanded the case and instructed the district court to determine that question.

Moreover, while *Alexander* involved Michigan-law claims against individual defendants, the decision it quoted about the viability of claims against individual defendants who were employed by a corporate defendant, *Kruso*, was a *Ninth* Circuit case involving only *California* state law.  Therefore, this court finds *Alexander* and *Kruso* to be of no value in ascertaining how the Michigan appellate courts would view the Wolf's claims against nondiverse defendant Nelson.

**D.     Bankers Fails to Show that Wolf Has No Colorable Argument as to Time Bar**

All of Bankers' arguments regarding Wolf's claims against Nelson present reasons why the Michigan courts *could*, or in Bankers' view *should,* dismiss those claims – but they fail to show that, *taking Wolf's factual allegations as true*, Wolf's claims against Nelson are not even "colorable."

First, Bankers contends that Wolf's claims against Nelson for breach of the duty to warn and breach of the duty to report violations of law are time-barred under M.C.L. § 600.5805(10)'s three-year statute of limitations for tort claims.  Bankers contends that those claims accrued (and the limitations period started to run) no later than February 2004, when Wolf was harmed because Zimmerman convinced him to invest in the Ponzi scheme.  On that view, the limitations period would have expired in February 2007, several months before Wolf filed the original complaint in

state court in May 2007.  *See* Bankers Br. at 16-17.

But in determining whether state-law claims against a nondiverse defendant are colorable, this court is obligated to "resolve all disputed questions of fact and ambiguities in the controlling.... state law in favor of the non-removing party."  *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (quoting *Alexander v. EDS Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)).   Under this standard, the court must accept Wolf's factual allegation that it was not until August 2005 that he discovered that Bankers and Nelson et al. knew that Zimmerman had engaged in unethical and possibly illegal business practices, had been terminated for that reason, and was likely to contact her former Bankers clients.  *See* Am. Comp. ¶ 122.

The defendants maintain that they did not undertake any affirmative act to conceal the factual basis for the Wolfs' claims, but that presents factual or mixed legal/factual disputes that must, on a remand motion, be resolved in favor of the Wolfs: (1) did the defendants undertake any affirmative act to conceal the factual basis for the Wolfs' claims, and (2) when should reasonable diligence have led the Wolfs to discover the basis for their claims against these defendants?  In other words, the Wolfs have a colorable claim that their duty-to-warn and duty-to-report claims against Nelson did not accrue until less than three years before they filed the original complaint in this matter.

Indeed, the Michigan courts typically employ an extra statutory "discovery" rule, tolling a limitations period until the time when the plaintiff did discover, or reasonably should have discovered, the existence of the cause of action against the particular defendant, unless there is a statutory directive to the contrary.  *See generally Tretadue v. Gorton*, No. 06-128579 *et al.*, – N.W.2d –, 2007 WL 2126494 (Mich. July 27, 2007) (Corrigan, J.).  In Nelson's favor, the court notes M.C.L. § 600.5827's provision that generally a "claim accrues at the time upon which the

claim is based was done regardless of the time when damage results" unless M.C.L. § 600.5829-5838 provides a different accrual time.  The court further finds that none of the latter provisions is relevant to these claims against Nelson.

But M.C.L. § 600.5855 provides that

[i]f a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

See generally Phinney v. Perlmutter, 564 N.W.2d 532 (Mich. App. 1997) (under M.C.L. § 600.5855, the limitations period is tolled when a party conceals the fact that the plaintiff has a cause of action);

Sills v. Oakland Gen. Hosp., 559 N.W.2d 348 (Mich. App. 1996) (plaintiff may invoke M.C.L. § 600.5855 tolling by proving affirmative acts of misrepresentation that were designed to prevent discovery of cause of action).[8]  Resolving all factual disputes in the Wolfs' favor as the non-removing parties, the Wolfs have a colorable argument that at least their duty-to-warn and duty-to-report claims against Nelson did not accrue until August 2005, when an anonymous source allegedly informed them of the basis for those and other claims.  Under M.C.L. § 600.5855, the Wolfs would then have two years, i.e., until August 2007, to assert those claims against Nelson.

_____

[8]

In any event, neither party mentions that there is Michigan authority which holds that a plaintiff need not prove affirmative acts of concealment of a cause of action when he was in a fiduciary relationship with the defendant.  See Brownell v. Garber, 503 N.W.2d 81, 85 (Mich. App. 1993) (citing Lumber Village, Inc. v. Siegler, 355 N.W.2d 654 (Mich. App. 1984)).  See also Carr v. Wittingen, 451 N.W.2d 584 (Mich. App.), rev'd in part o.g., 456 N.W.2d 713 (Mich. 1990); Bradley v. Gleason Works, 438 N.W.2d 330 (Mich. App. 1989); cf. Eschenbacher v. Hier, 110 N.W.2d 731 (Mich. 1961) (lamenting the fact that some then-recent fraudulent-concealment cases drew "no distinction . . . between those who deal with one another at arm's length and those whose relationship is confidential or fiduciary.").

-17-

Consequently, this court cannot predict with confidence that Michigan appellate courts, after weighing the evidence and competing factual allegations, would find M.C.L. § 600.5855 inapplicable and dismiss these claims against Nelson as time-barred under M.C.L. § 600.5827. *See State v. Detroit Lumbermen's Ass'n, Inc.*, Civil Action No. 79-904, 1979 WL 18703, at *4 (Mich. Cir. Ct. Oct. 29, 1979) ("The issue as to whether the statute of limitations has been tolled by fraudulent concealment raises a material issue of fact which should be determined only after hearing evidence thereon.") (citing *Draws v. Levin*, 322 N.W. 447 (Mich. 1952) and *Buffalino v. Mich. Bell. Tel. Co.*, 404 F.3d 1023 (6th Cir. 1968)).

### E.    Bankers Fails to Show that Wolf Has No Colorable Argument as to Nelson's Duty to Warn under Michigan Common Law or the Michigan Insurance Code

Banker next contends that even if Wolf's duty-to-warn claim against Nelson was not time-barred, it lacks merit because they did not interact with Nelson, who was sued merely because he was the Traverse City branch manager at the relevant times. Bankers Br. at 10. Bankers relies on the Michigan common-law principle that an individual generally has no duty to protect someone who is endangered by a third party's conduct unless there is "a 'special relationship' either between the defendant [Nelson] and the victim [the Wolfs], or the defendant and the third party who caused the injury [former Traverse City office sales agent Zimmerman]." *Id.* (quoting *Murdock v. Higgin*, 559 N.W.2d 639, 643 (Mich. 1997)).

Bankers points out that *Murdock* gave numerous examples of such special relationships, *see Murdock*, 559 N.W.2d at 643 n.11, and the list does not include insurer-insured, Bankers Br. at 17-18. But Bankers fails to explain how we can know that the Michigan courts would consider that list exhaustive rather than merely illustrative. In other words, Bankers provides no Michigan case-law

-18-

for the proposition that the enumeration of such situations *as examples* necessarily precludes recognition of other situations that also give rise to a special relationship (and an attendant duty to warn).  It is more plausible to read *Murdock*'s list as illustrative, given the precise words that the Michigan Supreme Court used there: "Unlike cases in which this Court has recognized a special relationship between a plaintiff and a defendant, this plaintiff . . . ."  *Murdock*, 559 N.W.2d at 643.[9]

Moreover, Wolf does identify a Michigan appellate decision that recognizes a "special relationship" between insurer and insured, albeit not specifically in the context of a duty to warn of non-physical danger from a third party.  In *Hearn v. Rickenbacker*, the Michigan Court of Appeals stated:

> We agree that there is a special relationship between an insurer and its insured and that, due to the quasi-public nature of the insurance industry, there is a duty for insurance companies to deal fairly with their customers apart from any contractual obligations owed.  *McCarty v. First of Georgia Ins. Co.*, 713 F.2d 609, 611 (CA 10, 1983) . . . .  *See also Drouillard v. Metropolitan Life Ins. Co.*, . . . 310 N.W.2d 15 (1981), where this Court held that, although this relationship is not a fiduciary one, there is a relationship of trust and confidence which the court will recognize as sufficient to permit an action for fraud to be predicated upon a misrepresentation.

*Id.* at 528.  The Michigan appellate courts might well hold that the special relationship between insurer and insured does not extend far enough to impose a duty to warn, or at least not a duty to warn of non-physical danger from a third party, but Bankers has not presented binding authority to dispel doubt on that score.  The Michigan appellate courts simply have not ruled out the possibility

---

9

*Cf. People v. Wright*, 411 N.W.2d 826, 829 n.4 (Mich. App. 1987) (referring to MICH. R. EVID. 404(b), the Michigan Court of Appeals remarked, "[T]he list of possible purposes for admission contained in the rule is illustrative, not exhaustive.") (citation omitted).;

*People v. Izzo*, 323 N.W.2d 360, 362 (Mich. App. 1982) ("The Court identified two factors which may establish extreme mental anguish . . . .  This list is, of course, not exhaustive but merely illustrative of possibly sufficient aggravating factors.  Case-by-case factual analysis is necessary...").

of permitting claims such as these against Nelson.  *Accord Baltimore Cty., Md. v. Signa Healthcare*,
No. 06-1877, – F. App'x –, 2007 WL 1655461, at *8 (4th Cir. June 5, 2007) ("Viewed in the proper
light, it is clear the County has the possibility of establishing that it had a special relationship with
[nondiverse defendant] Johnson.  First, the Maryland courts *have not ruled out*, or even addressed,
whether a special relationship could exist under the circumstances of this case.") (emphasis added);
*Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424-25 (4th Cir. 1999) (rejecting fraudulent-joinder
argument, reasoning that the state courts had not squarely foreclosed the plaintiff's claim).

Bankers also asserts that "duty-to-warn claims uniformly involve physical harm."  Bankers
Br. at 11.  But Bankers merely cites decisions that happened to involve physical harm; it does not
identify any language in these decisions holding that the duty to warn *cannot*, under appropriate
circumstances, apply to threats of financial or other nonphysical harm.  Even if this court doubted
the merit of a duty-to-warn claim not involving physical harm under these circumstances, that would
not undermine Wolf's right to have Nelson's citizenship counted for diversity purposes:  "In a
fraudulent joinder inquiry, federal courts are not to weigh the merits of a plaintiff's claim beyond
determining whether it is an arguable one under state law." *Pacheco de Perez v. AT&T Corp.*, 139
F.3d 1368, 1380-81 (11th Cir. 1998) (citation and internal quotation marks omitted).

Bankers next cites *Murdock*'s rule that to be protected as one owed a duty to warn, one must
be "readily identifiable as foreseeably endangered."  Bankers Br. at 11 (quoting *Murdock*, 559
N.W.2d at 644-45).  Bankers then alters the *Murdock* formulation without acknowledging that it has
done so, adding requirements that are not contained in *Murdock*: "Plaintiffs fail to explain why they
were any *more* readily identifiable or foreseeably endangered to Nelson than anyone else
Zimmerman encountered during her three-year tenure with Bankers."  Bankers Br. at 11.  *Murdock*

does not require the Wolfs to show that they were *more* readily identifiable or foreseeably endangered than other former Zimmerman clients – merely that they were readily identifiable and foreseeably endangered. Accepting the Wolfs' factual allegations as true, Bankers and Nelson had reason to believe that Zimmerman might contact the Wolfs, and they had strong reason to believe that Zimmerman's willingness to use deception in business dealings could directly endanger the Wolfs' property.[10]

Penultimately, Bankers cannot confidently state that the Wolf's claims against Nelson would fail under state law because Nelson did not communicate with the Wolfs. As discussed above, there is some Michigan appellate authority that when there is a fiduciary or other special relationship, a plaintiff need not prove affirmative acts of misrepresentation to show that the defendant prevented the plaintiff from learning of his causes of action. By analogy, we cannot say for sure that the Michigan courts would not permit the Wolfs to proceed against Nelson based on silent fraud and the failure to take action to satisfy his duty to inform and warn the Wolfs of the danger posed by the sales agent who had been hired into, then fired from, his office, while he was in charge.

**F.     Wolf's Other Claims Against Non-Diverse Defendant Nelson**

Because the defendants have failed to carry their burden of showing that the Wolfs lack a colorable duty-to-warn claim against Nelson, that alone requires rejection of the defendants'

---

[10]

The parties agree that in *Murdock*, the Michigan Supreme Court held that employers (such as Bankers and their alleged agent, Nelson) do not have a duty to disclose the grounds for terminating an employee (such as Zimmerman). 559 N.W.2d at 644 (citation omitted). As Wolf points out, however, *Murdock* reached its conclusion only after finding that there was no special relationship between the plaintiff and defendant there, which can distinguish *Murdock* from the relationship between the Wolfs and Nelson/Bankers.

fraudulent-joinder argument.  Therefore, the court need not consider whether the Wolfs also have colorable claims against Nelson for negligence per se (breach of federal and state statutory duties to report violations of the law, Count V of the first amended complaint), concert of action (Count VI), or civil conspiracy (Count VII) under Michigan law (Bankers Br. at 13-16 and Wolf Reply Br. at 9-10).  *Accord Baltimore Cty., Md. v. Signa Healthcare*, No. 06-1877, – F. App'x –, 2007 WL 1655461, at *5 (4th Cir. June 5, 2007) ("Because the County had the possibility of maintaining a negligent misrepresentation claim against [nondiverse defendant] Johnson, we need not address whether it could have possibly established its other causes of action against Johnson or [the other nondiverse defendant].");  *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 850 n.4 (3d Cir. 1992) ("The district court held that . . . [nondiverse defendant] could not be held liable for bringing Batoff to the attention of the Pennsylvania Board of  Psychology Examiners.  Inasmuch as we find that Batoff asserted other claims which [defeated the fraudulent-joinder argument and thus] required the case to be remanded, we need not consider this conclusion.").

**DISCUSSION**
**Has Bankers Established Federal-Question Jurisdiction?**

Having determined that defendant Nelson's non-fraudulent presence in the case destroys complete diversity, the court next considers whether Bankers has established federal-question jurisdiction.  It has not.

In Count V, the Wolfs assert a state-law claim for negligence, and they seek to establish that negligence in part by showing that the defendants violated 18 U.S.C. § 4 by failing to report Zimmerman's alleged violations of the law.  Bankers seeks to establish federal-question jurisdiction by relying on the Supreme Court's decision in *Grable & Sons Metal Prods., Inc. v. Darue Eng. &*

*Mfg.*, 545 U.S. 308 (2005), but that reliance is misplaced.  Bankers correctly notes that "in *Grable & Sons Metal Products, Inc. v. Darue Engr. & Mfg.*, 545 U.S. 308, 312 (2005), the Supreme Court clarified that to establish 'arising under' jurisdiction, the complaint need not plead a cause of action created by federal law. * * * '[T]he absence of a federal private right of action [is] evidence relevant to, but not dispositive of' the existence of federal-question jurisdiction."  Bankers Br. at 16.  But then Bankers goes farther afield, unpersuasively attempting to fit this case within the *Grable* framework:

> [t]he interpretation and application of 18 U.S.C. § 4 raises a substantial federal question for the United States and defendants.  First, it is imperative that the federal courts uniformly interpret and apply federal criminal laws.  Second, the resolution of this federal issue is of substantial import to Defendants.  Plaintiffs allege that they have violated federal criminal law, a bold accusation that Defendants should not be expected to take lightly.  As such, Count V's allegations go beyond the 'garden variety state tort law' referenced [sic] in *Grable*'s discussion of *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986).  *Grable*, 545 U.S. at 318-19.

Bankers Br. at 17.

In *Grable,* the Supreme Court clarified when a cause of action not created by federal law (i.e. a nominally state-law claim) nonetheless "arises under federal law" for the purpose of the federal-question statute (28 U.S.C. § 1331) "because federal law is a necessary element of the [plaintiff's] claim for relief."  *Grable*, 545 U.S. at 312.  *Grable* involved real property belonging to Grable & Sons Metal Products, Inc. ("Grable"), which the IRS seized to satisfy a federal tax deficiency; Grable received notice of the seizure by certified mail before the IRS sold the property to Darue Engineering & Manufacturing ("Darue").  *Grable*, 545 U.S. at 310.  Five years later, Grable sued Darue in state court to quiet title, asserting that Darue's title was invalid because the IRS had improperly conveyed the notice of seizure and sale to Grable.  *Id.* at 311.  The governing statute, 26 U.S.C. § 6335(a), provided that "notice in writing shall be given . . . to the owner of the property .

-23-

. . or shall be left at his usual place of abode or business."  Grable maintained that the statute required personal service, not service by certified mail.  *Id.* at 311.

Darue removed the case to federal court.  Darue invoked federal-question jurisdiction on the ground that Grable's claim of title depended on the interpretation of a federal statute, i.e., I.R.C.. § 6335(a).  The Supreme Court held that federal question jurisdiction existed, reasoning that the meaning of the federal tax provision is "an important issue of federal law that sensibly belongs in a federal court."  *Grable*, 545 U.S. at 315.  Whether Grable received notice adequate under the federal statute, the Court noted, was "an essential element" of Grable's quiet-title claim; indeed, it "appear[ed] to be the only . . . issue contested in the case."  *Id.* at 315.

The Wolf's Count V negligence claim is readily distinguishable from Grable's quiet-title claim in at least two important respects.  First, Grable could not prevail on its quiet-title claim without a favorable interpretation of the notice provision of the federal tax code.  Here, by contrast, the alleged violation of 18 U.S.C. § 4 is only one of two independent grounds advanced in support of the negligence claim.  The Wolfs also seek to establish negligence *per se* by showing that Bankers violated *state* statutory provisions:

> 253.  At all times since July 8, 2002, Defendant, Bankers Life, has had a legal duty to notify the Michigan Insurance Commissioner of the specific reasons for Margaret Zimmerman's termination as set forth in the Report of July 8, 2002, (Exhibit E). MCL 500.1208b(2), MCL 500.1208b(3) and MCL 500.1239.
>
> 254.  The alleged wrongful actions of Margaret Zimmerman detailed in the Report of July 8, 2002 (Exhibit E) are violations consistent with one or more of those itemized in MCL 500.1239.
>
> * * *
>
> 257.  Shannon Nelson had a duty to Plaintiffs that extended to notifying the Michigan Insurance Commissioner of the specific reasons for Margaret Zimmerman's termination as set forth in the Report of July 8, 2002 (Exhibit E).
>
> 258.  Banker's Life's duties to Plaintiffs extended to notifying the Michigan

-24-

> Insurance Commissioner of the specific reasons for Margaret Zimmerman's termination as set forth in the Report of July 8, 2002 (Exhibit E).

1st Am. Comp. ¶¶ 253-54 and 257-58.  Thus, unlike Grable, Wolf can prevail on his Count V negligence claim even if a court interprets 18 U.S.C. § 4 not to require the defendants to notify law-enforcement authorities of Zimmerman's conduct under these circumstances.  The second major distinction from *Grable* is that the interpretation of the federal tax notice provision appeared to be the *only* contested issue in that case.  Here, by contrast, there are a host of other issues contested, both within the Count V negligence claim and on Wolf's seven other claims.

For these reasons, the Supreme Court's *Grable* decision does not support Bankers' assertion that the mention of 18 U.S.C. § 4 as one of several methods of proof on Count V creates federal-question jurisdiction.  Moreover, the Supreme Court recently cautioned that *Grable* should not be too lightly or frequently used to invoke federal-question jurisdiction over claims created by state law.  In *Empire Healthcare Ass., Inc. v. McVeigh*, – U.S. –, 126 S.Ct. 2121 (2006), the Court characterized the class of state-law claims that raise a substantial federal question as a "special and small category."  *Id.*, 126 S.Ct. at 2136.  After concluding that the state-law claims there did not raise a substantial federal question, the Court forcefully concluded, "*Grable* emphasized that it takes more than a federal element to open the 'arising under' door.  This case cannot be squeezed into the slim category *Grable* exemplifies."  *Id.*, 126 S.Ct. at 2137 (citation and internal quotation marks omitted).  Nor can this case.

The absence of a substantial federal question here is also confirmed by our Circuit's recent application of *Grable*, which shows that state-law claims will not easily trigger federal-question jurisdiction even when they require interpretation of a federal statute or regulation.

In *Mikulski v. Centerior Energy Corp.*, No. 03-4486, – F.3d –, 2007 WL 2372301 (6th Cir.

Aug. 21, 2007) (en banc), plaintiff-shareholders alleged that the defendant corporation over-reported

taxable dividends, causing the shareholders to overpay their own federal income taxes. The

shareholders brought suit in state court for breach of contract and fraud, and the corporation

removed to federal court. Sitting en banc, our Circuit held that there was no federal-question

jurisdiction *despite* the fact that the complaint alleged violation of an Internal Revenue Code

accounting provision and the parties disputed the interpretation of that provision. The Circuit

explained,

> The plaintiffs' theory certain seems to raise a dispute federal issue: whether 26
> U.S.C. § 312(n)(1) requires capitalization of only those interest expenses . . . . * * *
> The plaintiffs have certainly staked their claim on this federal issue, and the parties
> have crossed swords over it. Moreover, the plaintiffs concede that their claim will
> fail under Centerior's interpretation of the statute. We therefore have little difficulty
> in concluding that there is a federal issue and it is actually disputed.
> 
> * * *
> 
> The second component is the substantiality of the federal interest. *See Grable*, 545
> U.S. at 314. The Supreme Court has identified four aspects of a case or an issue that
> affects the substantiality of the federal interest in that case or issue: (1) whether the
> case includes a federal agency, and particularly, whether that agency's compliance
> with the federal statute is in dispute; (2) whether the federal question is important
> (i.e., not trivial); (3) whether a decision on the federal question will resolve the case
> (i.e., the federal question is not merely incidental to the outcome); and (4) whether
> a decision as to the federal question will control numerous other cases (i.e., the issue
> is not anomalous or isolated). *See Empire*, 126 S.Ct. at 2137 (analyzing *Grable*, 545
> U.S. at 313).

*Mikulski*, – F.3d at –, 2007 WL 2372301 at *12-13 (en banc) (internal citations and quotation marks

omitted).

Applying this four-factor test, the en banc Sixth Circuit in *Mikulski* concluded that the need

to interpret the federal tax provision did not present a substantial federal question. The Circuit

determined that the first factor weighed against substantiality, as there was no federal agency

-26-

involved in the case:

> Section 312(n)(1) imposes a duty on citizens (e.g., corporations), not the federal government (or a government agency), and this case involves no question of whether a government agency has complied with a statute or regulation. While the federal government may have an interest in the uniform application of regulations that relate to the collection of taxes, it has only a limited interest in private tort or contract litigation over the private duties involved in that collection.

*Mikulski*, 2007 WL 2372301 at *13 (internal citations omitted). Likewise in our case, 18 U.S.C. § 4 imposes a duty on citizens (and corporations such as Bankers Life), not the federal government, and this case involves no question of whether a federal agency has complied with that statute. While the federal government may have an interest in the uniform interpretation of 18 U.S.C. § 4, it has a far more limited interest in private tort litigation asserting that private parties committed negligence per se under state common law by shirking their duties under the statute.

In *Mikulski*, the en banc Circuit determined that the second of the four factors also weighed against finding a substantial federal question:

> The second factor is far more subjective and requires that we decide whether the question to be resolved is important. To be sure, resolution of the issue will require the analysis and interpretation of federal law . . . . But the specific question at issue concerns only the interpretation of the effective date of an accounting provision that instructs companies on how to adjust their earnings and profits calculations to account for certain construction[-]project interest expenses. This question does not implicate any broader or more substantial issue. The question does not even necessarily resolve all aspects of the present case, and it will provide little if any precedent for future cases. * * * Based on our subject view of this issue, we find it more likely than not that this particular question is not *particularly* important to the federal government.

*Mikulski*, 2007 WL 2372301 at *14 (internal citations omitted) (emphasis added). Likewise in our case, the question of whether 18 U.S.C. § 4 required Bankers Life and Nelson to report Zimmerman's misconduct or the reasons for her termination to the authorities is not trivial, but it does not implicate a broader or more substantial issue. Moreover, like the federal question held not

-27-

to be substantial in *Mikulski*, the 18 U.S.C. § 4 issue "does not even necessarily resolve all aspects of the present case . . . ."  *Mikulski*, 2007 WL 2372301 at *14.  This is because, as mentioned above, the alleged violation of 18 U.S.C. § 4 is only one of at least two bases for the Count V negligence claim; the other basis is the alleged violation of a Michigan statute.

In *Mikulski*, the en banc Circuit determined that the third of the four factors – whether resolution of the question is dispositive of the case – also weighed against finding a substantial federal question.  *Mikulski*, 2007 WL 2372301 at *14.  Likewise in our case, the 18 U.S.C. § 4 issue is not dispositive of Count V, let alone the entire case, for the reason just mentioned.

Finally, in *Mikulski*, the en banc Circuit determined that the fourth of the four factors – whether resolution of the issue would be controlling in numerous other cases – also weighed against finding a substantial federal question:

> [T]he fourth factor is again subjective, and, as touched upon in the discussion of the second factor, we find that a decision on this particular and very narrow question will not be controlling over numerous other cases.  The disputed provision applies only to "construction period carrying charges," a special category of construction costs . . . .  Furthermore, the particular issue concerns the effective date of September 30, 1984 – some 22 years ago.  Finally, if costs must be capitalized under other provisions of the Internal Revenue Code, then [the disputed federal statutory provision] is not applicable.  Since 1986, corporations such as Centerior have been required to capitalize interest expenses in order to calculate taxable income.  Thus, the adjustment prescribed by [the disputed provision] has been at least partially superseded.

*Mikulski*, 2007 WL 2372301 at *14 (internal alterations and quotation marks omitted).  This is the only one of the four factors that, unlike in *Mikulski*, does not weigh against finding a substantial federal question.  Unlike the disputed federal statutory provision in *Mikulski*, there is no indication that the disputed federal provision here (18 U.S.C. § 4) has been partially superseded, or that this particular dispute over its interpretation is very unlikely to recur elsewhere because of the narrow

circumstances in which the provision applies.

On balance, however, three of the four *Mikulski* factors weigh against finding that the interpretation of 18 U.S.C. § 4 that may be occasioned by Count V implicates a substantial federal interest.[11]

Finally, the court notes that the Michigan state courts are perfectly capable of interpreting 18 U.S.C. § 4 and determining whether it required defendants to notify law-enforcement or regulatory authorities as Wolf contends. *Mikulski*, – F.3d at –, 2007 WL 2372301 at *4 (en banc) ("[S]tate courts are generally presumed competent to interpret and apply federal law.") (citing *Zwickler v. Koota*, 389 U.S. 241, 245 (1967) ("During most of the Nation's first century, Congress relied on the state courts to vindicate essential rights arising under the Constitution and federal laws.")).

In short, Bankers has not met its burden of establishing diversity jurisdiction or federal-question jurisdiction, so it was not entitled to remove this case to federal court.

## ORDER

Accordingly, the plaintiffs' motion to remand this matter to state court **[docket #8] is GRANTED.**

Defendants' motion to dismiss the first amended complaint for failure to state a claim on

---

[11]

There are no Supreme Court decisions, and there appear to be no Circuit decisions, published or unpublished, addressing whether a state-law claim that requires the interpretation of 18 U.S.C. § 4 raises a substantial federal question.

which relief can be granted **[docket #5] is DENIED as moot**.

Plaintiffs' motion for leave to file a second amended complaint **[docket #21] is DENIED as moot.**

This case is **REMANDED** to the Circuit Court of Grand Traverse County, Michigan pursuant to 28 U.S.C. § 1447(d) for lack of subject-matter jurisdiction.

This case is **TERMINATED.**

This is a final order, but it is <u>not</u> appealable. *See Dunch v. Nat'l Union Fire Ins. Co. of Pa.*, 43 F. App'x 918, 920 (6th Cir. 2002) (28 U.S.C. "[s]ection 1447(d) 'prohibits review of all remand orders issued pursuant to § 1447 (c)  whether erroneous or not and whether review is sought by appeal or by extraordinary writ.'") (quoting *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 346 (1976)); *Sweeney v. Nat'l Union Fire Ins. Co.*, 38 F. App'x 296, 297 (6th Cir. 2002) ("Title 28 U.S.C. § 1447(d) bars review of remand orders to state courts when the order 'fall[s] into either category of remand order described in § 1447(c) . . . lack of subject-matter jurisdiction or defects in removal procedure.'") (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996)).[12]

---

[12]

"A limited exception . . . exists when a remand order is 'based on a substantive decision on the merits of a collateral issue as opposed to just matters of jurisdiction.'" *Godsey v. Miller*, 9 F. App'x 380 (6th Cir. 2001) (per curiam) (Krupansky, Boggs, & Batchelder, JJ.) (quoting *Regis Assocs. v. Rank Hotels (Mgmt.), Ltd.*, 894 F.3d 193, 194 (6th Cir. 1990)).  But that exception does not apply when the district court merely considers, when evaluating a fraudulent-joinder argument, whether the plaintiff may have a colorable claim against a non-diverse defendant. *See:*

*Titus v. Knoll Pharm. Co.*, 106 F. App'x 960, 961-62 (6th Cir. 2004) (order remanding consumer's action against physician and drug manufacturer due to lack of diversity jurisdiction was not appealable, notwithstanding defendant's contention that district court's ruling that plaintiff did not fraudulently join her physician was reviewable because it resolved a collateral issue);

*Godsey*, 9 F. App'x 380 (order remanding terminated employee's action against former employer for lack of diversity jurisdiction was not appealable, where district court merely determined that employee had a colorable claim of age discrimination against non-diverse individual

**IT IS SO ORDERED this 25th day of September 2007.**

/s/ Paul L. Maloney

_____

Honorable Paul L. Maloney
United States District Judge

---

defendants under state statute so as to defeat fraudulent-joinder argument);

*Calvert v. Xerox Corp.*, No. 94-1701, 50 F.3d 10, 1995 WL 109000, at *3 (6th Cir. Mar. 14, 1995) (per curiam) (Kennedy, Krupansky, & Norris, JJ.) ("We are not persuaded that this exception applies in the present case.  The district court's inquiry into ERISA preemption and fraudulent joinder was 'necessarily related to the question of jurisdiction.'") (quoting *Baldridge v. Ky.-Ohio Transp., Inc.*, 983 F.2d 1341, 1349 (6th Cir. 1993)).